## Mary F. Coleman v. Board of Education of the School District of Philadelphia, Appellant.

70

Argued October 9, 1975, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Vincent J. Salandria,* for appellant.

*Harry P. Begier, Jr.,* with him, of counsel, *Orlofsky, Cozen & Begier,* for appellee.

*John M. McNally, Jr.,* First Deputy City Solicitor, with him *Sheldon L. Albert,* City Solicitor, and *Stephen Arinson,* Chief Deputy City Solicitor, for intervenor.

OPINION BY JUDGE CRUMLISH, JR., January 23, 1976:

Mary F. Coleman brought an action in mandamus against the Appellant, Board of Education of the School District of Philadelphia (School Board), seeking to compel it to reinstate her to the position from which she had been discharged or in the alternative to transfer her to another position, with back pay. The parties filed cross-motions for summary judgment. The Court of Common Pleas of Philadelphia County[1] denied School Board's motion for summary judgment and granted Coleman's motion for summary judgment. School Board appeals those orders. The Board of Revision of Taxes of the City of Philadelphia (Board of Revision), although not a party to the action in the court below, has intervened in this appeal.

In 1960, School Board assigned Coleman to work at the Board of Revision[2] as a file clerk in the assessment and collection of taxes for the School Board.[3] On

---

1. Order dated December 11, 1974 (Hirsh, J.)

2. The Intervenor contends that, had it been a party to the proceedings below, it would have produced evidence to show that Coleman was assigned to School Board by Board of Revision. However, Board of Revision has only intervened for the purpose of the instant appeal and did not seek intervention below. This Court may only consider the record certified to us by the court below. Additional factual averments not of record are not properly before us.

3. Section 12-309(a) of the Educational Supplement to the Philadelphia Home Rule Charter authorizes the School Board to enter into agreements with departments, agencies, boards, or commissions of the City for the purpose of joint tax collection, purchasing of supplies, etc.

June 26, 1974, she was notified by her supervisor at Board of Revision that her assignment was terminated effective June 28, 1974. The following facts, which are accepted as true,[4] characterized the relationship between Coleman and School Board:

a) Coleman was assigned an employee number by School Board;

b) Coleman was issued a School Board employee identification card bearing her employee number and identifying her as a "clerk";

c) Coleman is a member of the School Employees' Retirement Association;

d) Coleman's salary is paid by School Board;

e) Coleman is a member of the School Board Credit Union;

f) Provision is made in School Board's budget allocations for municipal services, including Board of Revision Services, performed by school district employees.

In her Complaint, Coleman contends that she was an employee of School Board and that her termination was unlawful under the provisions of the Education Supplement to the Philadelphia Home Rule Charter (Home Rule Charter) and the Public School Code governing employees of School Board.

The sole question before this Court is whether, based on the uncontroverted facts, Coleman was an "employee" of School District. We think that she was.

In the mandamus actions, summary judgment under Pa. R.C.P. No. 1098 may not be granted where there exists a disputed question of fact which is material to the disposition of the case. *Borough of Monroeville v. Effie's Ups and Downs*, 12 Pa. Commonwealth Ct. 279,

---

4. Coleman filed a request for admissions as to facts and documents pursuant to Pa. R.C.P. No. 4014. School Board failed to respond within ten (10) days as required by Rule 4014. Accordingly, the matters contained in Coleman's request are deemed admitted.

315 A. 2d 342 (1974), *Venneri v. County of Allegheny*, 5 Pa. Commonwealth Ct. 105, 289 A. 2d 523 (1972). However, the facts set forth in Coleman's request for admissions as to facts and documents must be deemed uncontroverted for the purposes of this appeal since School Board failed to object to or deny them.[5]

We turn now to the merits of this appeal.

Section 12-309(a) of the Home Rule Charter specifically authorizes School Board to enter into joint personnel agreements with other municipal and state agencies. The last sentence of that section reads:

"In any such agreements, the Board shall, insofar as possible, safeguard all rights of employment, status, and tenure of employees *who may be transferred into or out of* School District service by virtue of the operation of such agreements." (Emphasis added.)

Section 514 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §5-514 (School Code) outlines the procedure by which employees of School Board may be terminated:

"The board of school directors in any school district, except as herein otherwise provided, shall *after due notice, giving the reasons therefor, and after hearing if demanded,* have the right at any time to remove any of its officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of the school laws of this Commonwealth, or other improper conduct." (Emphasis added.)

If Coleman is an "employee" of School Board, then she is entitled to the protections and procedural safeguards accorded to all School Board employees by virtue of the foregoing provisions of the Home Rule Charter and the School Code.

In *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A. 2d 362 (1974), the Supreme Court

---

5. Rule 4014(b) Pa. R.C.P.

addressed itself to the question of whether an employer-employee relationship existed between certain court-related public employees of Washington County and the Common Pleas Court Judges for whom the employees worked. The Court held that:

> "The relation of employer and employe exists when a party has the *right to select* the employe, the *power to discharge him,* and the *right to direct both the work to be done and the manner in which such work shall be done."* 457 Pa. at 462, 322 A. 2d at 365. (Emphasis added.)

*Sweet* also applied the principle that employees can have more than one employer when it stated that:

> "Our review of the present record convinces us that appellants are at least *an* employer of *some* of the employes included in the bargaining unit comprised of court related employes." 457 Pa. at 462, 322 A. 2d at 365. (Emphasis in original.)

The following are undisputed facts as to Coleman:

1) She was functioning as a clerk pursuant to an arrangement between School Board and Board of Revision whereby she performed work for School Board purposes, albeit at the Board of Revision;

2) She had a School Board employee number and identification card bearing the signature of the Superintendent of Schools (the chief administrative officer of School Board);

3 She was a participant in the School Employee's Retirement Association;

4) She was a member of School Board's credit union;

5) She was paid by School Board;

6) Her salary was provided for by School Board in its budgetary documents.

All of these facts clearly establish that Coleman was an employee of School Board. We therefore agree with the court below that School Board was bound by the mandate of Section 12-309 (a) of the Home Rule Charter to

protect the procedural safeguards guaranteed to Coleman, as an employee of School Board, by Section 514 of the School Code.

School Board contends that Coleman is their "employee" only if it (School Board) exercises *actual control* over her work. We disagree.

*Sweet* clearly emphasizes that it is the *right* to control rather than *actual* control which is one of the indicia of the existence of an employer-employee relationship.

Intervenor cites *Costigan v. Philadelphia Finance Department Employees Local 696*, Pa. , 341 A.2d 456 (1975), for the proposition that School Board and Board of Revision are "joint employers" of Coleman. *Costigan* held that both the Register of Wills and the City of Philadelphia were "employers" of persons working in the office of the Register of Wills. Therefore, both employers were required to join in a collective bargaining agreement with the employees' bargaining agent as required by the Public Employee Relations Act. The Court said:

> "Although common law principles relating to the existence of an employer-employee relationship are relevant to the determination of that question under the Public Employee Relations Act, these principles are not to be applied without regard for the purposes and policies of that Act." Pa. at , 341 A.2d at 459.

As in *Costigan*, we are mindful of the purposes and policies underlying the procedural safeguards contained in Section 514 of the School Code. They were enacted to benefit school employees by protecting them from summary dismissal and, therefore, should be liberally construed toward that end. Unlike *Costigan*, our situation in the instant appeal does not require a finding of "joint-employment" in order to further the purposes of protective legislation. We therefore decline to hold that Board of Revision and School Board are "joint-employers" of Coleman.

That Coleman may have initially contacted Board of Revision which, in turn, referred her to School Board with a request that she be placed on School Board's payroll, does not alter this result. Of greater relevance is where Coleman finally came to rest after the initial contact with Board of Revision. Furthermore, the record does not indicate that Coleman did, in fact, initially contact the Board of Revision. The only evidence of record on this point is the testimony of Michael Aaronson, Executive Assistant for Personnel for the School District of Philadelphia, who stated that the usual procedure is for the Board of Revision to refer a person to the School Board with a request that he or she be placed on School Board's payroll. This record merely allows an assumption that the usual procedure was followed in this case.

Intervenor analogizes the instant case to *American Federation of State, County and Municipal Employees v. Shapp (AFSCME v. Shapp)*, 443 Pa. 527, 280 A. 2d 375 (1971). There it was held that persons who obtained positions in state government solely by virtue of political patronage may be summarily dismissed when the winds of political fortune change. *AFSCME v. Shapp* also held that these employees have neither a Federal nor State Constitutional or statutory right to the job. The instant case is clearly distinguishable from *AFSCME v. Shapp* in that here, Coleman asserts no constitutional right to her position. Moreover, here, unlike the situation in *AFSCME v. Shapp,* there exists controlling legislation, namely, Section 514 of the School Code and Section 12-309 (a) of the Home Rule Charter.

We reject intervenor's contention that Section 514 of the School Code applies only to employees appointed for specific terms or to those who had contracts for specific time periods. Neither the language of Section 514 nor any authority cited by intervenor or any rule or reasoning revealed by our intensive research allow such an interpretation, except perhaps in the case of casual employees.

Having determined that Coleman was an "employee" of School Board, and that School Board was therefore required to guarantee the procedural safeguards provided by Section 514 of the School Code before her services were terminated, we must now consider the propriety of the relief sought.

Section 514 of the School Code entitled her to a hearin *if demanded*. Not having sought a hearing, she can not now seek reinstatement on the ground that she was denied the procedural safeguards and her prayer for relief must be denied.

#### ORDER

AND NOW, this 23rd day of January, 1976, the order of the Court of Common Pleas of Philadelphia County granting plaintiff's motion for summary judgment is reversed. The order of the Court of Common Pleas of Philadelphia County denying defendant's motion for summary judgment is affirmed.