## Bruno v. City of Philadelphia Zoning Board of Adjustment

C.P., Philadelphia County, no. 9308-4136.

*Michael Anthony DeFino,* for plaintiffs.
*Cheryl L. Gaston,* for defendant.
*Michael S. Chuhinka,* for defendant.

AVELLINO, *J.,* December 9, 1994—

MEMORANDUM

Following a contested hearing on an application for a variance, the members of the Zoning Board of Ad-

justment announced their votes beginning with the chairman:

"CHAIRMAN KELLY: ... My vote is yes with the proviso, all deliveries must be hand trucked in 840 League Street and no motor vehicle deliveries to 840 League Street. ('No delivery proviso')

"MS. LEONARD: My vote is no.

"MR. LOGAN: No.

"MR. BAILEY: No.

"MR. PARKER: My vote is yes." (Notes of Testimony at 42, March 17, 1993.)

Although the vote was 3-2 *against* the application, uncharacteristically the chair did not announce the tally (or the fact that the application had been denied). In any event, the ZBA blundered. On the following day it issued a *written* decision *granting* the variance.[1] Not surprisingly, the applicants, Paul and Peter Bruno were delighted. They assumed that some of the board members voting "no" had switched their vote and, because the decision contained a "no delivery proviso," reasoned that Chairman Kelly had been instrumental in causing their change of heart. Meanwhile, the protestant, Ms. Talio, was also pleased. She received a postcard from the ZBA saying the Brunos' application had been *"Refused."*

---

1. The written decision was issued on March 18, 1993, and trumped, so to speak, the oral decision that had been announced the previous day. See *e.g.,* 2 Pa.C.S. §555 (In order to be valid, an agency adjudication must be in *writing).* See also, *Relosky v. Sacco,* 514 Pa. 339, 348 n.7, 523 A.2d 1112, 1116-17 n.7 (1987) (an *oral* denial of a zoning application does not toll the clock on the "deemed approved" sanction authorized by section 10908(09) of The Pennsylvania Municipalities Planning Code, 53 P.S. §10908(9)).

Because both sides were happy, neither appealed. The Brunos obtained the permits authorized by the variance, hired a builder, and began altering the premises at 840 League Street to accommodate a walk-in refrigerator. Upon observing the alterations, Ms. Talio complained bitterly to the ZBA.[2] The ZBA, in turn, issued a "corrected" decision on August 12, 1993, *denying* the variance. Significantly, the ZBA did not offer the Brunos an opportunity to be heard beforehand.

The new decision infuriated the Brunos. They filed a statutory appeal contending, in substance, that the ZBA was not authorized to issue an adverse decision more than 30 days after issuing a favorable one that was ostensibly valid.[3] Their appeal was assigned to me, and following a preliminary conference, I opined that it was likely to turn on one of *two* equitable exceptions to well-established legal doctrines, namely, the "clerical error" exception to the final order doctrine,[4] or the "vested-rights" exception to the general rule that mistakenly issued permits convey no legal rights.[5]

The parties were allowed to present evidence on these issues,[6] and, following an assessment of that evidence

---

2. Judging from the record, Ms. Talio (or someone on her behalf) complained to Councilman Vignola who, in turn, complained to the ZBA.

3. See *e.g., Kentucky Fried Chicken of Altoona Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commw. 90, 95, 309 A.2d 165, 167 (1973) ("[A]bsent a petition for reconsideration or the granting of the opportunity to be heard [an agency may not] reverse itself on [any] substantive issues previously decided.").

4. See *e.g., Kentucky Fried Chicken, supra* at 94-95, 309 A.2d at 167 ("[A]n administrative agency, on its own motion, having provided the proper notice and explanation, may correct typographical, clerical and mechanical errors obviated and supported by the record.").

5. See *e.g., Petrosky v. Zoning Board of Upper Chichester Township,* 485 Pa. 501, 402 A.2d 1385 (1979) (articulating "vested-rights" doctrine for Pennsylvania courts).

(as well as the relevant parts of the ZBA record), I decided the case should be governed by "vested-rights" doctrine. Withal, I transformed the Brunos' appeal into an equity proceeding.[7] Afterwards, I ruled that the five-factor test for "vested-rights" had been satisfied.[8] Stated differently, I was persuaded the Brunos were *innocent* of any wrongdoing, *diligent* in attempting to comply with the law, acted in *good faith, spent* substantial un-recoverable funds, and that the *public health, safety* and *welfare* would not be adversely affected by an additional walk-in refrigerator in Philadelphia's celebrated Italian Market.

A procedural concern deserves to be mentioned. Because the ZBA had issued a corrected decision five months after issuing an erroneous one (without taking additional evidence), it never had a chance to address the question of "vested-rights." Before transforming the appeal, I considered a remand, but decided against it, in part, because vested rights is an equitable remedy (and, hence, arguably beyond the jurisdiction of a local agency), but largely because I wanted to spare the parties from the delay, expense, and emotional upheaval associated with prolonging an administrative burlesque.

Withal, I entered an order rescinding the ZBA's *second* decision on estoppel grounds. Afterwards, Ms. Talio appealed to the Commonwealth Court. This memorandum explains the reasons for the order which she has challenged.

6. See *e.g.,* Depositions of P. Bruno, J. Filipe, and R. D'Agostiono, (March 24, 1994).

7. On transforming, see *e.g.,* 42 Pa.C.S. §708(b) (authorizing common pleas to transform improvident statutory appeals and to regard the appeal papers as if they were "a complaint or other process commenced against the [agency]...."). See also, *id.* at section 701(a) (when common pleas sits as an appellate court the Judicial Code provisions at sections 702-708 apply or are available).

8. See *e.g., Petrosky, supra* at 507, 402 A.2d at 1388.