Beaver Falls City Council, Nick L. Camp. Mayor, and Russell Chiodo, Chief of Police, Appellants, *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

Argued December 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*R. Clifton Hood,* with him *Theodore A. Tenor,* for appellants.

*Sanford Kahn,* General Counsel, for appellee.

OPINION BY JUDGE ROGERS, January 14, 1975:

In 1966, Council of the City of Beaver Falls enacted, and its mayor signed, an ordinance authorizing the mayor to "employ two women to assist the police department in the patrolling of parking meters and stalls . . . installed on city streets or on any parking lot operated by the Parking Authority." In 1971, by a second ordinance, the mayor's authorization was enlarged to allow the employment of four women for the same purpose. Both ordinances fixed an hourly pay rate.

Marie A. Morrell and Lauretta A. McConahy, persons employed by virtue of the ordinances mentioned, filed a complaint with the Pennsylvania Human Relations Commission charging the mayor, council and the chief of police, with discrimination "against them . . . in the terms, conditions and privileges of employment *as police officers* because of their sex (female)." (Emphasis supplied.) They complained of restricted job opportunities, lower pay than male employes, the denial of pay increases granted male police officers and the assignment of part rather than full time work. The Commission, after hearing, found that the complainants were in fact police officers, that they were discriminated against because of their sex and ordered respondents to do a number of things, including, somewhat inconsistently with its findings, that they create positions on the city police force for the complainants with civil service status and that they pay the complainants back and future pay conforming to that enjoyed by male police officers.

Of course, the validity of the complaint and the propriety of the Commission's order must depend on whether the complainants were police officers. This is a legal determination which must be based on factual findings. *Venneri v. County of Allegheny*, 5 Pa. Commonwealth Ct. 105, 289 A.2d 523 (1972).

The Commission found that the duty of the complainants has been essentially that of patrolling parking meters

and writing tickets for parking violations, but that the complainants have occasionally been required to search female prisoners, to escort females to prison or to hospital, to direct traffic, to observe for stolen cars and to apprehend runaway children. If further found that the complainants wear uniforms bearing patches reading "Beaver Falls Police" and that they report to the police department. Although, as the Commission found, some of these activities were formerly engaged in by police officers, they do not, in our opinion, make the complainants police officers. The duties and responsibilities which would, are set out in *Hartshorn v. Allegheny County*, 9 Pa. Commonwealth Ct. 132, 304 A.2d 716 (1973). There, the common meaning of the title policeman was declared to be properly applied to one who performs services critical to public safety in the investigation and detection of serious crimes—a person trained, equipped (with, in that case, gun, handcuffs, badge of office and motor vehicles) and actually engaged in the detection of persons suspected of crime. The compainants here had no such duties, responsibilities or equipment. It is significant, we believe, to note that in order to stimulate Christmas shopping in Beaver Falls, persons filling the position of parking attendants were required to take their two-week vacations immediately before that holiday.

It follows that if, as we hold, the Commission erred in concluding that the complainants were police officers, the complainants were not required by law to be treated exactly as police officers and that their charge of unequal treatment based on sex, fails.

The Commission also concluded that the ordinances mentioned were discriminatory because they expressly declared men to be ineligible for the position of meter attendant. This was correct, but it was not in issue and cannot serve as the basis for relief to the complainants, whose sex made them beneficiaries rather than victims of the discriminatory enactment.

34

We finally observe that neither of the complainants have applied to be police officers of Beaver Falls, although at least one other woman has but was not appointed for reasons other than her sex.

ORDER

AND NOW, this 14th day of January, 1975, the order of the Pennsylvania Human Relations Commission herein is set aside.