516 A.2d 875

Woodland Hills School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued September 9, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Patrick J. Clair*, with him, *William C. Andrews, Goehring, Rutter & Boehm*, for petitioner.

*Ernest N. Helling*, Assistant Counsel, with him, *Mary M. Rogers*, Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 24, 1986:

Woodland Hills School District (District) and the Department of Education (Department) have filed cross motions for summary judgment seeking a declaratory judgment as to the School District's obligation under Section 1374 of the Public School Code of 1949 (Code)[1] to provide midday transportation to gifted,[2] nonpublic school students.

For the 1982-83 school year, the District organized its special education program for gifted students[3] to provide elementary school students instruction one-half day per week in one of the District's public school buildings. The transportation program included nonpublic school students. However, in the 1983-84 school year, the District reorganized its gifted student program. Instruction was offered in each public school and itinerant teachers traveled to each school on the scheduled days, thus eliminating transportation for the nonpublic school students.[4]

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1374.

[2] The term "mentally gifted" is defined in 22 Pa. Code §341.1(iv) as the "[o]utstanding intellectual and creative ability the development of which requires special activities or services not ordinarily provided in the regular program."

[3] 22 Pa. Code §341.1(iv) provides:
Persons shall be assigned to a program for the gifted when they have an IQ of 130 or higher. A limited number of persons with IQ scores lower than 130 may be admitted to the gifted programs when other educational criteria in the profile of the person strongly indicate gifted ability.

[4] Nonpublic school students participating in the one-half day weekly program were provided transportation from home to the public school if they were scheduled for the morning session, or from the public school to home if they were attending the afternoon session.

Parents of these nonpublic school students filed complaints contending that their children's rights to special education were violated. Upon investigation, the Department found the District to be in violation of state law and directed[5] the District, or alternatively the Allegheny Intermediate Unit, to provide midday transportation to the nonpublic school students. The District and the Department seek by summary declaratory judgment to determine their respective obligations to provide midday transportation to these students.

Summary judgment is properly entered only when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Kane v. Hilton,* 78 Pa. Commonwealth Ct. 629, 468 A.2d 1160 (1983). To determine

---

[5] By letter of September 21, 1984, to the Department directed the District to implement a transportation plan. The Department's letter stated, in pertinent part:

Therefore, we are advising the district to take immediate steps to comply with 24 P.S. §13-1374, by implementing the following:

1. Parents of all nonpublic students for whom the district has recommended placement in its gifted program are to be informed in writing of their right to request transportation between the nonpublic and public schools.

2. Unless a parent specifically refuses the offer of transportation, the district is to proceed to update IEPs (since current IEPs state "natural flow only" under transportation).

By copy of this letter I am alerting Allegheny Intermediate Unit of the Bureau's intent to enforce Section 1374. If the district continues to take the posture that it will not transport the students involved, then pursuant to Section 1374 the intermediate unit must provide transportation. Therefore, if Woodland Hills chooses not to transport the students involved, you should refer all requests for transportation to the intermediate unit.

Woodland Hills Brief: Appendix pp. 22, 23; Department of Education's Brief: Appendix p. 1.

whether to enter a summary judgment, a court must view the record in the light most favorable to the non-moving party. *J. Berman & Sons, Inc. v. Department of Transportation,* 21 Pa. Commonwealth Ct. 317, 345 A.2d 303 (1975). The moving party's burden to prove that its right to a summary judgment is clear and free from doubt is a heavy one. *Zeck v. Balsbaugh,* 66 Pa. Commonwealth Ct. 448, 445 A.2d 253 (1982).

The mentally gifted nonpublic school pupils who are the subject of this action have a right to be identified and to be provided an education program designed to meet their needs. *Centennial School District v. Department of Education,* 94 Pa. Commonwealth Ct. 530, 503 A.2d 1090 (1986). Accordingly, when the district developed and offered its special education program to resident pupils, it also gave nonpublic school students the opportunity for "dual enrollment."[6]

The only dispute, therefore, is whether the District has an obligation to provide midday transportation to the nonpublic school students. The Department argues that Section 1374, governing transportation of exceptional children, controls; the District contends that its only transportation obligation to gifted students arises out of the more general Section 1361[7] to provide identi-

---

[6] "Dual Enrollment" allows students, who are enrolled in nonpublic schools also to enroll part-time in the District's gifted students program. Dual enrollment of nonpublic school students is authorized by Section 501 of the Code, 24 P.S. §5-501; *see also* 22 Pa. Code §11.33.

[7] Section 1361 of the Code, 24 P.S. §13-1361, provides that:
(1) The board of school directors in any school district may, out of funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceed-

cal transportation services to public and nonpublic school students. We disagree with the District's contention.

When a general provision in a statute is in conflict with a special provision in the same or another statute, the special provisions shall prevail, and the two shall be construed, if possible, so that effect may be given to both. 1 Pa. C. S. §1933. This is a fundamental rule of statutory construction.

Our review of the statutory provisions compels us to agree with the Department that the controlling provision for the transportation of exceptional students is the more specific section, Section 1374 of the Code, which provides:

> Any exceptional child, who is regularly enrolled in a special class that is approved by the Department of Public Instruction, or who is enrolled in a regular class in which approved educational provisions are made for him, may be furnished with free transportation by the school district. When it is not feasible to provide such transportation the board of school directors may in lieu thereof pay for suitable board and lodging for any such child. If free transportation or board and lodging is not furnished for any exceptional child who, by reason thereof, is unable to attend the class or center for which he is qualified, the intermediate unit shall provide the transportation necessary.

---

ing ten miles by the nearest public highway. . . . When provision is made by a board of school directors for the transportation of public school pupils to and from such schools . . . the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools. . . .

Nonpublic elementary school students are included in Section 1374 because they are mentally exceptional children and are regularly enrolled in an approved special class operated by the District. Pursuant to Section 1374, the District[8] must furnish either free transportation or board and lodging to these students.[9] We hold that the District cannot escape this express duty by relying on the general transportation obligation found in Section 1361.

In *Pires v. Department of Education,* 78 Pa. Commonwealth Ct. 127, 467 A.2d 79 (1983), we examined Section 1374 of the Code and held that an exceptional child enrolled in a Department-approved special class or in a regular class with approved special education provisions is entitled to free transportation by the school district or the intermediate unit.[10]

---

[8] We note that Section 1374 requires the intermediate unit to provide the necessary transportation if the child is unable to attend because of the District's failure to provide either transportation or board and lodging. Since Woodland Hills is currently providing midday transportation, the ultimate responsibility of the intermediate unit to transport exceptional children under Section 1374 is not at issue here.

[9] However, Section 1362 of the Code, 24 P.S. §13-1362, does provide a limited circumstance under which neither transportation nor board and lodging is required to be provided. When construed together, Sections 1362 and 1374 identify that limited circumstance, and we conclude that the school district has either to transport or board these mentally exceptional students unless the distance involved is less than one and one-half mile and is not along a hazardous route. We agree with the Department that this interpretation of Sections 1374 and 1362 *in pari materia* is clearly supported by the common meaning of the language in these sections. 1 Pa. C. S. §1903(a).

[10] The issue in *Pires* was whether the special education program operated by the intermediate unit and conducted on the grounds of a *private* licensed facility fell within the ambit of Section 1374 so that the parents would be eligible for reimbursement of

We disagree with the District's interpretation that Section 1374 merely requires that exceptional children be transported when the need for transportation arises as a direct consequence of the child's exceptionality. The District's interpretation would deny any exceptional child who does not suffer from a mental or physical handicap which requires transportation the opportunity for dual enrollment. Such a denial is not only contrary to the provisions of the Code[11] but also is a result never intended by the legislature. *See Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 674 (1982). The parents' election to have their children attend a nonpublic school and to be dually enrolled in the District's gifted program should not impose on them the choice between a duty to provide midday transportation or in the alternative forego their children's right to gifted special education.

Accordingly, we grant the Department of Education's motion for summary judgment and deny Woodland Hills School District's motion.

## ORDER

The Department of Education's motion for summary judgment is granted and the Woodland Hills School District's cross-motion for summary judgment is denied.

---

their transportation costs. Although this case involves education at public school facilities, the rationale of *Pires* is applicable in the instant case.

[11] 24 P.S. §§1-101—25-2593.